UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MELISSA R.,

                                    Plaintiff,

v.                                                          3:20-cv-883 (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                              OF COUNSEL:
LAW OFFICES OF STEVEN R. DOLSON           STEVEN R. DOLSON, ESQ.
  *Counsel for Plaintiff*
126 North Salina Street, Suite 3B
Syracuse, NY 13202

SOCIAL SECURITY ADMINISTRATION            MICHAEL L. HENRY, ESQ.
OFFICE OF THE GENERAL COUNSEL
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**DECISION AND ORDER**</u>

     Melissa R. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a final decision of the Commissioner of Social Security ("Commissioner") denying her

requests for disability and supplemental security benefits.  (Dkt. No. 1.)  This case has proceeded

in accordance with General Order 18 of this Court.  Pursuant to 28 U.S.C. § 636(c), the parties

consented to the disposition of this case by a Magistrate Judge.  (Dkt. No. 5.)  Both parties filed

briefs, which the Court treats as motions under Federal Rule of Civil Procedure Rule 12(c).

(Dkt. Nos. 3, 11, 13.)  For the reasons set forth below, the Commissioner's decision is affirmed.

## I.  BACKGROUND

Plaintiff was born in 1977, graduated from high school, and completed three years of college before leaving due to a seizure disorder.  (T. at 68, 70, 308.[1])  She has a variety of work experience, and most recently worked as an environmental cleaner in a yogurt factory.  *Id.* at 333, 347, 367-68.  Plaintiff stopped working at the yogurt factory after she had a seizure during work on September 19, 2012.  *Id.* at 80, 308, 332.

Claiming that day as the date of disability onset, Plaintiff filed for disability benefits and supplemental security income on May 24, 2016.  *Id.* at 171, 182.  Through her current claims,[2] Plaintiff asserts the following disabilities: idiopathic seizure disorder, herniated disk, degenerative disk disease, and spinal stenosis.  *Id.*  The Commissioner denied Plaintiff's initial application, and she requested a hearing before an Administrative Law Judge ("ALJ").  *Id.* at 195, 203.  ALJ Gretchen Mary Greisler held the first hearing on July 19, 2019, and Plaintiff testified along with vocational expert Susan Howard.  *Id.* at 62-102.  The ALJ held the second hearing on May 10, 2019, and independent medical expert Dr. Alvin Stein testified along with vocational expert Joseph Atkinson.  *Id.* at 106-43.  On June 27, 2019, the ALJ issued a partially favorable decision, granting Plaintiff benefits for the closed period of April 23, 2016, through August 30, 2017 ("the closed period"), and denying benefits from August 31, 2017, onward.  *Id.* at 17-36.  The Appeals Counsel denied Plaintiff's request for reconsideration.  *Id.* at 1, 304-307.  Plaintiff now seeks this Court's review.  (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.  Page references to other documents identified by docket number are to the page numbers assigned by the Court's CM/ECF electronic filing system.

[2] Plaintiff previously filed claims on October 13, 2011, and January 23, 2014, however, those claims were denied, and neither was reopened.  (T. at 17-18, 147-65.)

## II.      STANDARD OF REVIEW

In reviewing a final decision of the Commissioner, courts must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)); *see also Brennan v. Colvin*, No. 13-CV-6338 (AJN) (RLE), 2015 WL 1402204, at *10 (S.D.N.Y. Mar. 25, 2015).[3]  "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004).  Accordingly, the reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

If the ALJ applied the correct legal standards, the reviewing court must determine whether the ALJ's decision is supported by substantial evidence. *Tejada*, 167 F.3d at 773; *Bowen*, 817 F.2d at 985.  "Substantial evidence means more than a mere scintilla." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive.  42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).

---

[3] "Since the standards for determination of disability and for judicial review in cases under 42 U.S.C. § 423 and 42 U.S.C. § 1382c(a)(3) are identical, decisions under these sections are cited interchangeably." *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983).  Moreover, "[t]he regulations that govern the two programs are, for today's purposes, equivalent." *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019).  Rather than cite to relevant regulations under both 20 C.F.R. § 404.1501 *et seq.* (governing disability insurance) and 20 C.F.R. § 416.901 *et. seq.* (governing supplemental security income), the Court will cite to the disability insurance regulations. *See, e.g.*, *Sims v. Apfel*, 530 U.S. 103, 107 n.2 (2000).  Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial

evidence inquiry, remand may be appropriate. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir.

2019); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). Remand may accordingly be appropriate

where the ALJ has failed to develop the record, *Klemens v. Berryhill*, 703 F. App'x 35, 38 (2d

Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999), adequately appraise the weight or

persuasive value of witness testimony, *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019);

*Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008), or explain her reasoning, *Klemens*, 703 F.

App'x at 36-38; *Pratts*, 94 F.3d at 39.

## III.   DISCUSSION

The ALJ concluded Plaintiff was disabled during the closed period (i.e., from April 23,

2016, through August 30, 2017) because Plaintiff did not have the residual functional capacity

("RFC") to perform jobs that existed in the national economy. (T. at 24-30.) However, the ALJ

concluded Plaintiff's condition and RFC improved after the closed period such that Plaintiff

would no longer be off task for 25 percent of the day due to pain, nor would she be prevented

from walking or standing for a cumulative total of one hour every workday. *See id.* at 24, 32.

Except for these minor improvements in Plaintiff's abilities, the ALJ's pre- and post-closed

period RFC determinations were identical. *See id.* However, the ALJ concluded that after the

closed period, Plaintiff's improved RFC enabled her to perform jobs that existed in the national

economy. *Id.* at 35-36. The ALJ accordingly concluded Plaintiff was not disabled after August

30, 2017. *Id.* at 36.

Plaintiff claims the ALJ's decision is not based on substantial evidence because it is a

product of two legal errors: (A) failure to properly apply the treating physician rule, and (B)

failure to properly evaluate Plaintiff's subjective complaints of symptomology.  (Dkt. No. 11 at 5-14.)  The Court will address each argument, in turn.

### A.   The ALJ's Evaluation of Dr. Haswell's Opinions

Plaintiff has a history of lower back pain.  (*See generally* T. at 453-61, 508, 587-88, 642.)  On December 27, 2017, she had back surgery to address cauda equina syndrome, a herniated disc, and a progressive left L4-5 radiculopathy with partial foot drop.  *Id.* at 587-88, 642.  Following the surgery, Plaintiff obtained treatment from various medical sources, including her primary care provider, Dr. David Haswell.  *See id.* at 597, 611-12, 642.  Dr. Haswell offered two medical opinions on Plaintiff's RFC—the first on March 7, 2018 (the "March opinion"), and the second on June 19, 2018 (the "June opinion").  *Id.* at 596-97, 696-97.  In the March opinion, Dr. Haswell diagnosed Plaintiff with seizure disorder and back pain.  *Id.* at 596.  Among other physical limitations, Dr. Haswell opined Plaintiff was moderately limited in her capacity to walk and stand, and very limited in her capacity to lift, carry, push, pull, and bend.  *Id.* at 597.  Dr. Haswell further opined Plaintiff had no limitation in her ability to maintain attention and concentration, but very limited in her ability to function in a work setting at a consistent pace. *Id.*

The ALJ determined this opinion was entitled to partial weight because Dr. Haswell's office "provided the claimant with treatment," his "opinion is supported by the fact that she underwent back surgery," and "the exertional and nonexertional restrictions are generally consistent with the claimant's course of treatment."  *Id.* at 26, 34 (citing *id.* at 587).  However, the ALJ found "the lifting/carrying restriction Dr. Haswell identified to be unsupported by the claimant's activities of daily living and the fact that she is carrying her pets."  *Id.* at 26 (citing *id.* at 510, 569).  The ALJ further concluded the record did not support Dr. Haswell's determination

that Plaintiff was very limited in her ability to function at a consistent pace. *Id.* at 34. According to the ALJ, "postoperative records noted improvement in her ability to walk, good recovery from surgery, and no evidence of cauda equina or conus compression." *Id.* (citing *id.* at 572). Additionally, the ALJ cited Dr. Haswell's treatment notes, which indicated "the claimant's postoperative recovery was going well, and that her back pain had improved." *Id.* at 35 (citing *id.* at 611).

In the June opinion, Dr. Haswell again diagnosed Plaintiff with seizure disorder and back pain. *Id.* at 696. He opined Plaintiff's pain or other symptoms would interfere with her ability to pay attention and concentrate for over 30 percent of a typical workday, prevent her from sitting more than 20 minutes at a time or standing more than 15 minutes at a time, and prevent her from sitting, standing, or walking more than two hours in a typical workday. *Id.* at 696-97. Dr. Haswell further concluded Plaintiff's impairments would cause her to be absent more than four days per month. *Id.* at 698.

The ALJ determined this opinion was entitled to limited weight because it overestimated Plaintiff's functional limitations. *Id.* at 27. The ALJ observed Dr. Haswell's opinions concerning Plaintiff's lifting, carrying, sitting, and standing limitations were inconsistent with treatment notes—including some of Dr. Haswell's own—which indicated that Plaintiff's back pain was improving, she had no neurological deficits, her seizure disorder was well controlled, and she had a normal range of motion. *Id.* (citing *id.* at 611-12, 624, 703). The ALJ further determined "the objective evidence in record does not support the significant exertional restrictions Dr. Haswell identified." *Id.* at 27-28. The ALJ cited records demonstrating Plaintiff's improved condition following her back surgery in December of 2016, including an improved foot drop exam, an MRI showing "no cauda equina or conus compression," and

normal musculoskeletal and neurological evaluations.  *Id.* at 27 (citing *id.* at 572, 575-76, 763).

Finally, the ALJ cited clinical notes and Dr. Stein's testimony as evidence that Dr. Haswell's

June opinion overestimated Plaintiff's functional limitations.  *Id.* at 27.

Plaintiff claims the ALJ's analysis fails to follow the treating physician rule.  (Dkt. No.

11 at 5, 8-10.)  She argues the ALJ "failed to give good reasons for discounting [Dr. Haswell's]

opinions and that a searching review of the record will not assure the Court that the substance of

the treating physical rule was not traversed."  *Id.* at 8.  The Commissioner contends "[t]he ALJ

gave less weight to Dr. Haswell's opinions because they were unsupported by the clinical

findings and inconsistent with other substantial evidence, including Dr. Stein's conflicting

opinion."  (Dkt. No. 13 at 13.)  The Commissioner accordingly contends the ALJ provided good

reasons for not giving controlling weight to Dr. Haswell's opinion, she evaluated Dr. Haswell's

opinion pursuant to the factors set forth under 20 C.F.R. §§ 404.1527(c)(2)-(6), and substantial

evidence supports her determination.  *Id.* at 13-22.

### 1.      Legal Standard

The treating physician rule applies here because Plaintiff filed her claims before March

27, 2017.  *See* 20 C.F.R. § 404.1527.  Under the treating physician rule, "the opinion of a

claimant's treating physician as to the nature and severity of an impairment is given controlling

weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in the case record."

*Estrella*, 925 F.3d at 95; *see also* 20 C.F.R. § 404.1527(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375

(2d Cir. 2015).  Controlling weight is not given to a treating physician's opinion that fails this

two-pronged test.  *See, e.g.*, *Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020)

(concluding the treating physician's opinion was not entitled to controlling weight because it was

inconsistent with the physician's "own treatment notes and [claimant's] self report of her activities of daily living"); *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (concluding the ALJ did not err in discounting the treating physicians' opinions because aspects of their opinions were "critically flawed" and "inconsistent with other substantial evidence"); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (explaining "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts").

"[W]hen a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive." *Greek*, 802 F.3d at 375 (citing 20 C.F.R. §§ 404.1527(c)(2)-(6)); *see also Estrella*, 925 F.3d at 95. Those factors include: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96; *see also* 20 C.F.R. §§ 404.1527(c)(2)-(6) (listing the factors). "After considering the above factors, the ALJ must comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Greek*, 802 F.3d at 375; *see also* 20 C.F.R. § 404.1527(c)(2).

When an ALJ declines to give controlling weight to a treating physician's opinion without explicitly applying these factors, she commits a procedural error that may warrant remand. *Estrella*, 925 F.3d at 96; *Greek*, 802 F.3d at 375. However, remand is not warranted if "a searching review of the record assures [the Court] that the substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96; *accord Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Remand is unnecessary . . . where application of the correct legal standard could

lead to only one conclusion.").  Stated differently, if "the record otherwise provides 'good reasons' for assigning little weight to" the treating physician's opinion, the substance of the treating physician rule has not been violated, and remand is not required.  *Estrella*, 925 F.3d at 96; *see, e.g.*, *Holler v. Saul*, 852 F. App'x 584, 585-86 (2d Cir. 2021); *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019); *Halloran*, 362 F.3d at 31-32.

### 2.      The ALJ Properly Evaluated Dr. Haswell's Opinions

The ALJ gave good reasons for declining to give Dr. Haswell's opinions controlling weight.  (*See* T. at 26-27, 34-35.)  The ALJ explained the opinions were unsupported by objective medical evidence and were inconsistent with other substantial evidence in the record. *See id.*; *see also* 20 C.F.R. § 404.1527(c)(2).  In evaluating Dr. Haswell's opinions, the ALJ addressed relevant factors set forth under § 20 C.F.R. §§ 404.1527(c)(2) through (c)(6).  (*See* T. at 26-27, 34-35.)  Substantial evidence supports the ALJ's evaluation of Dr. Haswell's opinions. *See Holler*, 852 F. App'x at 585-86; *Medina*, 831 F. App'x at 36.  Moreover, a searching review of the record demonstrates that the substance of the treating physician rule has not been traversed.  *See Estrella*, 925 F.3d at 96; *Halloran*, 362 F.3d at 32-33.

> i.      *The ALJ Gave Good Reasons for Discounting Dr. Haswell's Opinions*

The ALJ discounted aspects of Dr. Haswell's opinions because they were unsupported by objective medical evidence and inconsistent with substantial evidence in the record.  (T. at 26-27, 34-35; *see also* 20 C.F.R. § 404.1502(f) ("Objective medical evidence means signs, laboratory findings, or both."); *id.* at § 404.1502(g) (defining "Signs"); *id.* at § 404.1502(c) (defining "Laboratory findings").)  These are good reasons for discounting a treating physician's opinions.  20 C.F.R. § 404.1527(a)(2) ("If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."); *see, e.g.*, *Medina*, 831 F. App'x at 36; *Halloran*, 362 F.3d at 32.

First, the ALJ discounted the work pace limitation in Dr. Haswell's March opinion because it was "no longer supported by the evidence in record." (T. at 34.) Although Dr. Haswell did not explain why he concluded Plaintiff's impairments would impact her work pace (or how they would), the ALJ cited evidence that undermined such a conclusion. *Compare id.* at 596-97 *with id.* at 34-35. For example, the ALJ cited Dr. Haswell's treatment notes from January 20, 2017, which indicated Plaintiff's recovery from back surgery was going well, and her back pain had improved. *Id.* at 611. The ALJ also cited diagnostic and clinical testing from August 30, 2017, which indicated Plaintiff was "walking better" with a mostly stable gait, she had "fairly good strength," improved foot drop, and no cauda equina or conus compression. *Id.* at 572. The treatment notes from that visit further indicated Plaintiff had made "a very good recovery" from surgery. *Id.* In sum, the ALJ discounted the work pace limitation in Dr. Haswell's March opinion because it was unsupported by objective medical evidence and Dr. Haswell's own treatment notes. *See id.* at 34-35. These are good reasons. *See* 20 C.F.R. § 404.1527(a)(2); *see, e.g.*, *Medina*, 831 F. App'x at 36.

Second, the ALJ cited objective medical evidence, medical opinion evidence, and treatment notes to discredit the concentration, walking, and standing limitations included in Dr. Haswell's June opinion. *Id.* at 27-28. The objective medical evidence included: (i) a physical examination indicating Plaintiff had a normal range of motion in her neck on May 9, 2017, *id.* at 624; (ii) an improved foot drop score, stable gait, and spinal imaging showing small recurrent disc left L4-5, but no cauda equina or conus compression on August 30, 2017, *id.* at 572; (iii)

spinal imaging on August 30, 2017, showing improved conditions compared to preoperative imaging; *id.* at 575-76; and (iv) normal musculoskeletal and neurological physical examinations on November 8, 2018, *id.* at 763; *see generally* 20 C.F.R. § 404.1502(f).

The ALJ also cited medical opinion testimony from Dr. Stein, which undermined the concentration, walking, and standing limitations in Dr. Haswell's June opinion.  *See id.* at 27. The ALJ credited Dr. Stein's testimony "that the claimant's lower back surgery alleviated her symptoms."  *Id.*  In relevant part, Dr. Stein testified, that "symptoms" and "physical orthopedic signs" associated with Plaintiff's cauda equina syndrome improved since her surgery.  *Id.* at 109. Dr. Stein explained Plaintiff's most recent MRI, from July 20, 2018, "doesn't show any nerve root impingement."  *Id.* at 112 (discussing *id.* at 712-14.).  He opined "the surgery of the spine corrected the compressive signs and symptoms," and her "seizure disorder seems to be controlled."  *Id.* at 113.  Dr. Stein also testified about Plaintiff's foot drop, explaining her strength and flexion significantly improved in both feet after surgery, producing a "virtual disappearance of the foot drop."  *Id.* at 112.  Furthermore, when asked about Dr. Haswell's June opinion, Dr. Stein opined it was a "recording of what [Dr. Haswell] elicits from the [Plaintiff's] mouth," explaining it was "not an objective evaluation" of Plaintiff's capacity because Dr. Haswell "did not do[] examinations to determine what her functional capacity is."  *Id.* at 128-29. Indeed, in his June opinion, Dr. Haswell gives no indication that his conclusions were based on objective medical evidence.  *See id.* at 696-98.

The treatment notes cited by the ALJ also undermine the concentration, standing, and walking limitations in Dr. Haswell's June opinion.  *Id.* at 27.  The ALJ cited Dr. Haswell's treatment notes from January 20, 2017, where Dr. Haswell noted Plaintiff's recovery was going well, and her back pain had improved.  *See id.* (citing *id.* at 611).  The ALJ also cited a treatment

note from Dr. Haswell's office, dated July 11, 2018, where another doctor reported that Plaintiff had a "well controlled seizure disorder" with her last seizure occurring in 2016. *See id.* (citing *id.* at 703).

In sum, the ALJ pointed to objective medical evidence, medical opinion evidence, and treatment notes to discredit the concentration, walking, and standing limitations included in Dr. Haswell's June opinion. *Id.* at 27-28. These are good reasons to decline to give controlling weight to a treating physician's opinion. *See* 20 C.F.R. § 404.1529(c)(2); *see, e.g.*, *Medina*, 831 F. App'x at 36; *Halloran*, 362 F.3d at 32.

### ii.      Substantial Evidence Supports the ALJ's Evaluation

The ALJ considered the relevant factors set forth under 20 C.F.R. §§ 404.1527(c) when evaluating the persuasive value of Dr. Haswell's opinions. (*See* T. at 26-27, 34-35; *see generally Greek*, 802 F.3d at 375.) Substantial evidence supports the ALJ's evaluation of those opinions. *See Holler*, 852 F. App'x at 585-86; *Medina*, 831 F. App'x at 36. The record accordingly "provides good reasons for assigning little weight" to Dr. Haswell's opinions. *Estrella*, 925 F.3d at 96.

The ALJ's consideration of the relevant listed factors informed her conclusion that Dr. Haswell's March opinion was entitled to "partial evidentiary weight." (T. at 26-27, 34-35.) She partially credited the opinion because Dr. Haswell was Plaintiff's "family practitioner" and "provided [her] with treatment." *Id.* at 26; *see* 20 C.F.R. § 404.1527(c)(2) (requiring consideration of the length, nature, and extent of the treatment relationship). She also partially credited the opinion because Plaintiff "underwent back surgery," and Dr. Haswell's proposed "exertional and nonexertional restrictions are generally consistent with [Plaintiff's] course of treatment." (T. at 26, 34; *see also* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a

medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").)  However, as explained above, the ALJ partially discredited Dr. Haswell's March opinion because aspects of it were unsupported by diagnostic testing and inconsistent with numerous treatment notes.  (T. at 26, 34-35; *see also* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); *id.* at § 404.1527(c)(4).)  The ALJ also discredited aspects of the opinion that were inconsistent with Plaintiff's "activities of daily living and the fact that she is carrying her pets."  (T. at 26; *see also* 20 C.F.R. § 404.1527(c)(4).)  In sum, based on her consideration of evidence under the factors, the ALJ partially credited and partially discredited Dr. Haswell's March opinion.  (T. at 26, 34-35.)  Substantial evidence accordingly supports the ALJ's conclusion that Dr. Haswell's March opinion was entitled to partial evidentiary weight.  *Id.*; *see also Medina*, 831 F. App'x at 36.

The ALJ's conclusion that Dr. Haswell's June opinion was entitled to "limited weight" was also supported by her consideration of the relevant listed factors.  (T. at 27.)  As explained above, she discredited the concentration, walking, and standing limitations in Dr. Haswell's June opinion because they were unsupported by objective medical evidence.  *Id.*; *see also* 20 C.F.R. § 404.1527(c)(3).  She also discredited those limitations because they were inconsistent with Dr. Stein's medical opinion testimony, numerous medical treatment notes, and Plaintiff's statement "that she was feeling well without any complaints."  (T. at 27-28; *see also* 20 C.F.R. § 404.1527(c)(4).)  Substantial evidence accordingly supports the ALJ's conclusion that Dr. Haswell's June opinion was entitled to "limited weight."  (T. at 27.; *see also Medina*, 831 F. App'x at 36; *Halloran*, 362 F.3d at 32.)

Finally, a searching review of the record demonstrates that the ALJ's evaluation of Dr. Haswell's opinions did not traverse the substance of the treating physician rule. *Estrella*, 925 F.3d at 96.  For example, Dr. Haswell's March and June opinions are inconsistent with one other. *Compare id.* at 597 *with id.* at 696-97.  In his March opinion, Dr. Haswell concluded Plaintiff was moderately limited in her ability to walk and stand, and not limited in her ability to maintain concentration.  *Id.* at 597.  However, in his June opinion, Dr. Haswell concluded Plaintiff could not stand or walk for more than two hours every workday and would be off task over 30 percent every workday.  *Id.* at 696-97.  Dr. Haswell offered no explanation for why the severity of Plaintiff's limitations had changed.  *See id.* at 596-97, 696-98; *see also* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

In addition to this inconsistency, the evidence referenced in the ALJ's decision, and the evidence discussed above, substantial evidence undermines Dr. Haswell's conclusion that Plaintiff's impairments limited her ability to keep pace, concentrate, walk, and stand.  (*See generally* T. at 596-97, 696-98.)   Clinical examinations conducted by consultative examiner Dr. Brian Cole revealed Plaintiff had a normal gait, she could walk on her toes and heels without difficulty, she could engage in a full squat, her cervical and lumbar spines showed full flexion and extension, and she had a normal neurologic exam.  *Id.* at 559-60.  Following Plaintiff's surgery, numerous treatment records recognized her improved conditions, including decreased back pain and better walking.  *Id.* at 572, 577, 579, 581, 584, 593, 595, 609, 902, 909.  Treatment records also noted that Plaintiff's seizure disorder was controlled.  *Id.* at 589, 593, 595, 900, 904. Several sources reported that Plaintiff was engaged in a wide range of daily activities, including croquet and bowling.  *Id.* at 175-76, 179, 554, 559, 569, 904.

In sum, substantial evidence undermines Dr. Haswell's opinion that Plaintiff's impairments limited her ability to keep pace, concentrate, walk, and stand. (*See generally* T. at 596-97, 696-98.) A searching review of the record has accordingly assured the Court that the substance of the treating physician rule has not been traversed. *See Estrella*, 925 F.3d at 96; *Halloran*, 362 F.3d at 32-33.

**B.     The ALJ's Evaluation of Plaintiff's Symptoms**

Plaintiff testified about her symptoms at the administrative hearing on July 19, 2018. (T. at 68-98.) Most of her symptoms relate to her lower back impairment. *See id.* Plaintiff explained that her back impairment causes pain, drop foot, and difficulty moving around the house. *Id.* at 85-91. She testified these symptoms prevented her from activities like gardening, sweeping the floor, and reaching overhead. *Id.* at 86, 90-92. Plaintiff offered no testimony about whether or how her back pain impacts her ability to maintain concentration, stand, and walk over the course of a normal workday. *See id.* at 68-98.

The ALJ concluded Plaintiff has six severe impairments: seizure disorder, migraine headache, spine disorder, irritable bowel syndrome, bladder impairment, and anxiety disorder. (T. at 22, 31.) The ALJ determined that after her back surgery in December of 2016, Plaintiff experienced medical improvements in her spine disorder, bladder impairment, and seizure disorder. *Id.* at 33-34. The ALJ accordingly concluded Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not consistent with the evidence after the date of her medical improvements, August 30, 2017 (i.e., after the closed period). *See id.* at 25-29, 33-35. The ALJ determined Plaintiff's RFC had increased after the closed period—Plaintiff would no longer be off-task 25 percent of the day due to pain, nor would her impairments prevent her from walking and standing for more than one hour in a day. *See id.* at 24, 32-35.

Plaintiff claims the ALJ improperly evaluated her symptoms.  (Dkt. No. 11 at 13.)
According to Plaintiff, the ALJ failed to apply the correct legal standard and did not explain the
rationale for discounting Plaintiff's symptoms.  *Id.*  Plaintiff argues these errors frustrate
meaningful review.  *Id.*  In making these arguments, Plaintiff does not identify which symptoms
the ALJ overlooked or improperly evaluated.  *See id.*  Nor does Plaintiff explain how those
alleged errors contributed to the ALJ's conclusion that Plaintiff's RFC increased from August
31, 2017.  *See id.*

The Commissioner contends the ALJ applied the correct legal standard and explained her
reasoning.  (Dkt. No. 13 at 22-24.)  The Commissioner asserts "[t]he ALJ specifically
acknowledged and accounted for each of Plaintiff's subjective complaints in the RFC," and
"meaningfully addressed most of the factors in 20 C.F.R. § 404.1529(c)(3)."  *Id.* at 23-26.  The
Commissioner accordingly argues the ALJ's decision should be affirmed because her reasoning
and adherence to the regulations is clear.  *Id.* at 25-26.

1.     **Legal Standard**

To determine an individual's residual functional capacity, the ALJ must consider all the
relevant evidence in a claimant's case record, including symptoms.  20 C.F.R. §§ 404.1545(a)(1),
(3); *see also* 20 C.F.R. § 404.1529; SSR 16-3P, 2017 WL 5180304, at *2-3.  "Social Security
regulations provide a two-step process for evaluating a claimant's assertions of pain and other
symptoms."  *Watson v. Berryhill*, 732 F. App'x 48, 52 (2d Cir. 2018) (quoting *Genier v. Astrue*,
606 F.3d 46, 49 (2d Cir. 2010)).  "First, the ALJ must decide whether the claimant suffers from a
medically determinable impairment that could reasonably be expected to produce the claimant's
symptoms."  *Id.*; *see also* 20 C.F.R. §§ 404.1529(a)-(b); SSR 16-3P, 2017 WL 5180304, at *3-4.
Second, "the ALJ must then evaluate the intensity and persistence of the claimant's symptoms to

determine the extent to which the symptoms limit the claimant's capacity for work." *Watson*,

732 F. App'x at 52; *see also* 20 C.F.R. §§ 404.1529(a), (c); SSR 16-3P, 2017 WL 5180304, at

*4-8.

To evaluate the extent to which a claimant's symptoms limit her capacity to work, the

ALJ must consider medical opinion evidence,[4] objective medical evidence,[5] other medical

evidence,[6] and non-medical evidence,[7] including the categories of evidence defined in the factors

set forth under 20 C.F.R. §§ 404.1529(c)(3)(i) through (3)(vii).  *See* 20 C.F.R. § 404.1529(c);

SSR 16-3P, 2017 WL 5180304, at *3-8.  Those factors are: (i) the claimant's daily activities; (ii)

the location, duration, frequency, and intensity of claimant's pain or other symptoms; (iii)

precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any

medication claimant takes or has taken to alleviate pain or other symptoms; (v) the treatment,

other than medication, that the claimant receives or has received for relief of pain or other

symptoms; (vi) any measures claimant uses or has used to relieve pain or other symptoms; and

---

[4] "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities" to: perform physical, mental, and other demands of work; and adapt to environmental conditions.  *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv).

[5] "Objective medical evidence means signs, laboratory findings, or both."  20 C.F.R. § 404.1502(f); *see also id.* at § 404.1502(c) (defining laboratory findings); *id.* at § 404.1502(g) (defining signs); *see generally* SSR 16-3P, 2017 WL 5180304, at *5 (discussing the consideration of objective medical evidence).

[6] "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. § 404.1513(a)(3); *see generally* SSR 16-3P, 2017 WL 5180304, at *6-7 (discussing the consideration of other medical evidence).

[7] "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim."  20 C.F.R. § 404.1513(a)(4); *see generally* SSR 16-3P, 2017 WL 5180304, at *7 (discussing the consideration of nonmedical evidence).

(vii) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3P, 2017 WL 5180304, at *7-10.

If a claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the relevant evidence, including the claimant's own statements, the claimant's symptoms are more likely to reduce her capacities to perform work-related activities. SSR 16-3P, 2017 WL 5180304, at *9-10; *see also* 20 C.F.R. § 404.1529(c)(4) ("Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical and other evidence."); *accord Mortise v. Astrue*, 713 F. Supp. 2d 111, 124 (N.D.N.Y. 2010) ("A claimant's subjective evidence of pain is entitled to great weight where it is supported by objective medical evidence.").

The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  SSR 16-3P, 2017 WL 5180304, at *10; *see also Colon v. Saul*, No. 19-CV-1458 (PKC), 2020 WL 5764100, at *9 (E.D.N.Y. Sept. 28, 2020).  Remand may accordingly be appropriate where the ALJ failed to provide specific reasons for the weight given to the claimant's symptoms, *Colon*, 2020 WL 5764100, at *10; *Norman v. Astrue*, 912 F. Supp. 2d 33, 43 (S.D.N.Y. 2012), or failed to address relevant evidence, *Christopher B. v. Saul*, No. 8:19-CV-00905 (BKS), 2020 WL 5587266, at *19 (N.D.N.Y. Sept. 18, 2020); *Ingrassia v. Colvin*, 239 F. Supp. 3d 605, 628 (E.D.N.Y. 2017).  However, "remand is not required where the evidence of record permits [the Court] to glean the rationale of an ALJ's decision."  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013); *see also Atwater v. Astrue*, 512 F. App'x 67, 70 (2d

Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.").  Nor is it required where substantial evidence supports the ALJ's decision.  *See Del Carmen Fernandez v. Berryhill*, No. 18-CV-326 (JPO), 2019 WL 667743, at *11 (S.D.N.Y. Feb. 19, 2019); *Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *21-22 (E.D.N.Y. Aug. 14, 2012); *see also Cichocki*, 534 F. App'x at 75-76.

### 2.      The ALJ Properly Evaluated Plaintiff's Symptoms

The ALJ applied the correct legal standard and provided a coherent rationale for her evaluation of Plaintiff's symptoms.  *Cichocki*, 534 F. App'x at 76; *Atwater v. Astrue*, 512 F. App'x at 70.  Moreover, substantial evidence supports the ALJ's conclusions about the intensity, persistence, and limiting effects of Plaintiff's symptoms.  *Cichocki*, 534 F. App'x at 75-76; *Del Carmen Fernandez*, 2019 WL 667743, at *11.

First, medical opinion evidence supports the ALJ's evaluation of Plaintiff's symptoms after August 30, 2017.  20 C.F.R. §§ 404.1529(c)(1), (c)(4); SSR 16-3P, 2017 WL 5180304, at *6-7; *see also* T. at 34-35.  Only two medical sources offered opinions about Plaintiff's abilities after August 30, 2017: Dr. Haswell and Dr. Stein.  (T. at 107-34 (opinion testimony from Dr. Stein on May 10, 2019), 596-97 (Dr. Haswell's March opinion), 696-98 (Dr. Haswell's June opinion).)  As explained above, the ALJ properly concluded Dr. Haswell's opinion from March 7, 2018, was entitled to "partial evidentiary weight," and his opinion from June 19, 2018, was entitled to "limited weight."  *Id.* at 26-27, 34-35.  The ALJ also gave "partial evidentiary weight" to Dr. Stein's opinion, which Plaintiff does not challenge.  *See id.* at 26-27, 34; *see generally* Dkt. No. 11.

The ALJ considered these medical opinions when evaluating Plaintiff's symptoms after the closed period.  (T. at 34-35.)  The ALJ concluded the intensity, persistence, and limiting effects of Plaintiff's symptoms after the closed period did not limit her ability to remain on task during the day, nor did it significantly limit her ability to walk and stand.  *See id.* at 24, 32.  This conclusion is consistent with Dr. Haswell's opinion from March 7, 2018, and Dr. Stein's testimony from May 10, 2019.  *Id.* at 24, 32-35, 107-34, 596-97; *see also* 20 C.F.R. § 404.1529(c)(4).  For example, in his March opinion, Dr. Haswell concluded Plaintiff was only moderately limited in her ability to walk and stand, and not limited in her ability to maintain attention and concentration.  *Id.* at 597.  At the administrative hearing on May 10, 2019, Dr. Stein testified that Plaintiff's condition progressively improved since her surgery in December of 2016.  *See id.* at 109, 112-29.  Discussing Plaintiff's treatment records, her MRI results, and Dr. Haswell's medical opinions, Dr. Stein explained why he concluded Plaintiff's symptoms and physical orthopedic signs improved since the surgery.  *Id.*  In short, neither opinion supported the conclusion that Plaintiff's symptoms after the closed period significantly impacted her ability to concentrate, walk, or stand.  *See id.* at 107-34, 596-97.  Substantial medical opinion evidence accordingly supports the ALJ's conclusion that after the closed period, Plaintiff's symptoms did not significantly limit ability to remain on task, stand, and walk.  *See generally Cichocki*, 534 F. App'x at 75-76.

Second, other medical evidence supports the ALJ's evaluation of Plaintiff's symptoms after August 30, 2017.  20 C.F.R. §§ 404.1529(c)(1), (c)(2); SSR 16-3P, 2017 WL 5180304, at *5-7; *see also* T. at 33.  When evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ considered the relevant medical evidence in detail:

> "[O]n August 30, 2017, neurosurgical records indicated that the claimant had made a very good recovery following surgery.  She was noted to be walking

better with only a 'little bit of weakness' . . . On examination, the claimant had 'fairly good strength,' and while she had partial foot drop on the right side, it was much improved to at least 4+.  Her gait was considered stable.  Postoperative images showed small recurrent disc at L4-5, but no cauda equina or conus compression, which shows improvement when compared to preoperative diagnostic images.  She was advised to follow up with her neurosurgeon annually, which documents that her condition is stable and does not require more intense management.  An MRI scan from July 27, 2018, was essentially unchanged in comparison to the MRI scan from August 30, 2017.  In July 2018, a medical examiner noted that the claimant was in good health.  Neurology records from November 9, 2018, indicated that she had full strength in upper and lower extremities.  On December 21, 2018, the claimant stated that she was feeling much better and did not require the use of a walker.  She had a steady, independent gait.  On February 8, 2019, the claimant stated that she was feeling well without any complaints.  An MRI scan of her lumbar spine from February 26, 2019, was essentially unchanged when compared to the image from August 30, 2017."

(T. at 33 (citing *id.* at 572-73, 701, 714, 827, 900, 902, 907, 958-59).)  Based on her evaluation

of this medical evidence, the ALJ concluded Plaintiff "could perform a range of sedentary

work," including remaining on task, walking, and standing during a typical eight-hour workday.

*See id.* at 32-35; *see generally* 20 C.F.R. § 404.1567(a) ("Although a sedentary job is defined as

one which involves sitting, a certain amount of walking and standing is often necessary in

carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and

other sedentary criteria are met.").  Substantial evidence supports this conclusion.  (T. at 33, 572-

73, 701, 714, 827, 900, 902, 907, 958-59; *see generally Cichocki*, 534 F. App'x at 75-76.)

Third, other evidence supports the ALJ's evaluation of Plaintiff's symptoms after August

30, 2017.  20 C.F.R. §§ 404.1529(c)(3); SSR 16-3P, 2017 WL 5180304, at *7-8; *see also* T. at

25-28, 33-34.  When evaluating the intensity, persistence, and limiting effects of Plaintiff's

symptoms before and after the closed period, the ALJ considered the evidence defined in the

factors set forth under 20 C.F.R. § 404.1529(c)(3)(i) through (c)(3)(vii).  *Id.* at 25-28, 33-34.

The ALJ considered Plaintiff's daily activities, including her ability to lift her pets.  *Id.* at 26, 34;

*see* 20 C.F.R. § 404.1529(c)(3)(i).  She considered the frequency of Plaintiff's seizures,

migraines, and back pain.  (T. at 26, 28, 33; *see* 20 C.F.R. § 404.1529(c)(3)(ii).)  She considered

factors that aggravated Plaintiff's seizures and migraines.  (T. at 26; 20 C.F.R. §

404.1529(c)(3)(iii).)  She considered the types and dosages of medications Plaintiff used to

address symptoms.  (T. at 26-27; *see* 20 C.F.R. § 404.1529(c)(3)(iv).)  She considered the

extensive treatment Plaintiff received for symptoms associated with her back.  (T. at 25-28; *see*

20 C.F.R. § 404.1529(c)(3)(v).)  The ALJ also considered the fact that following surgery,

Plaintiff no longer needed to use a walker to support her back and address her limp.  (T. at 26,

33; *see* 20 C.F.R. § 404.1529(c)(3)(vi).)

When considering this evidence, the ALJ was only required to evaluate the factors that

were relevant to assessing the intensity, persistence, and limiting effects of Plaintiff's symptoms.

SSR 16-3P, 2017 WL 5180304, at *8; *see also id.* ("If there is no information in the evidence of

record regarding one of the factors, we will not discuss that specific factor in the determination

or decision because it is not relevant to the case.").  Therefore, the ALJ only addressed factors

that were made relevant by Plaintiff's production of evidence.  *See id.*  The ALJ explained how

those factors impacted her evaluation of Plaintiff's symptoms and the resulting RFC

determination.  (T. at 25-28, 33-34.)  For example, the ALJ "accounted for [Plaintiff's] lower

back surgery, coupled with her postoperative recovery, in finding that [she] would be unable to

work on a regular and sustained basis during the closed period," and by concluding she "would

be off task 25 percent of the workday and only able to walk and stand for one hour during the

closed period."  *Id.* at 26, 28.

The ALJ's evaluation of the factors directly influenced her evaluation of Plaintiff's

symptoms, which in turn impacted the RFC determinations.  *Id.* at 25-28, 33-34.  Those

determinations were nearly identical for the closed period and the period after August 30, 2017.
*Id.* However, the fundamental difference between those two periods is the ALJ's conclusion that
after the closed period, Plaintiff had an increased capacity to stay on task, walk, and stand during
a regular eight-hour workday. *Compare id.* at 25, 28, *with id.* at 32-34. Of the factors set forth
in 20 C.F.R. § 404.1527(c)(3), the factor that most impacted this conclusion was Plaintiff's daily
activities. *Id.* at 34; *see also* 20 C.F.R. § 404.1529(c)(3)(i). The ALJ noted that after August 30,
2017, Plaintiff was "able to take care of her activities of daily living," including taking care of
her animals, doing household chores, cooking, doing laundry, going shopping, playing sports
(i.e., croquet and bowling), and remain active around the house despite her pain. (T. at 34 (citing
*id.* at 554, 559, 569, 609, 893).) Based on this evidence, as well as the medical evidence
discussed above, the ALJ concluded that after August 30, 2017, Plaintiff's symptoms no longer
caused her to be off-task 25 percent of the day, nor did they prevent her from standing and
walking for more than an hour in an eight-hour workday. *Id.* at 32-35. Substantial evidence
supports this conclusion. *See generally Cichocki*, 534 F. App'x at 75-76.

Finally, Plaintiff failed to produce evidence demonstrating that the intensity, persistence,
and limiting effects of her symptoms after the closed period diminished her capacity to
concentrate, walk, and stand. (*See generally* Dkt. No. 11; T. at 68-98; *see also* 20 C.F.R. §
404.1529.) Plaintiff also failed to explain how the ALJ's symptoms evaluation and RFC
determination after the closed period is at odds with the evidence. *See id.* She has not created
the "logical bridge" between the evidence of record and the RFC limitation she desires. *See id.*
at 13; *see generally* 20 C.F.R. § 404.1529. These evidentiary and logical gaps undermine
Plaintiff's position. *See* 20 C.F.R. § 404.1529; SSR 16-3P, 2017 WL 5180304.

The Court finds no error in the ALJ's evaluation of Plaintiff's symptoms.  The ALJ considered all the relevant evidence and provided a coherent rationale for her conclusions.  *See* 20 C.F.R. § 404.1529; *see also* SSR 16-3P, 2017 WL 5180304, at *3-10.  Substantial evidence supports those conclusions.  *Cichocki*, 534 F. App'x at 75-76.

## IV.   CONCLUSION

Considering the foregoing, the Court finds the ALJ applied the correct legal standards and substantial evidence supports his decision.  Remand is therefore not warranted.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision denying Plaintiff supplemental security income benefits is **AFFIRMED**; and it is further

**ORDERED** that the Plaintiff's complaint (Dkt. No. 1) is **DISMISSED** and the Clerk of Court is directed to enter judgment and close the case.


Dated:       March 24, 2022
             Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge